2019 IL App (1st) 180840
Nos. 1-18-0840, 1-18-0895, 1-18-1020, cons.
Opinion filed March 29, 2019

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| MICHAEL JOHNSON and ROBERT ROSA, | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | |
| v.     (No. 2016-L-003433) | |
| AARON NASH; LYONS LIMOUSINE, LLC; PATRICK RICHARD LYONS; MARY LYONS; ZENITH LIMOUSINE, LLC; EDWARD KRAEMER & SONS, INC.; KENNY CONSTRUCTION COMPANY; KENNY-KRAEMER JOINT VENTURE; PLOTE, INC.; PLOTE CONSTRUCTION, INC.; ROADSAFE TRAFFIC SYSTEMS, INC.; TRAFFIC CONTROL & PROTECTION, INC.; GFS CONSTRUCTION, LLC; OMEGA & ASSOCIATES, INCORPORATED.; THE RODERICK GROUP, INC., PC; EXP U.S. SERVICES, INC.; THOMAS ENGINEERING GROUP, LLC; ALFRED BENESCH & COMPANY; V3 COMPANIES OF ILLINOIS, LTD.; V3 COMPANIES, LTD.; BV3 JOINT VENTURE; and ENERGY ABSORPTION SYSTEMS, INC., | Nos. 2016-L-003433, 2016-L-005389, 2016-L-010574, 2017-L-007057, cons. |
| Defendants | The Honorable Daniel T. Gillespie, Judge, presiding. |
| (Plote Construction, Inc., and Exp U.S. Services, Inc., Defendants-Appellants; Aaron Nash, Defendant-Appellee). | |
| DON CORNING and LOIS CORNING, | |
| Plaintiffs-Appellees, | |

No. 1-18-0840

|  |  |  |
|---|---|---|
| v.   (No. 2016-L-005389) | ) |
|  | ) |
| AARON NASH, LYONS LIMOUSINE, LLC, a Limited | ) |
| Liability Company; PATRICK RICHARD LYONS; | ) |
| ZENITH LIMOUSINE, LLC, a Limited Liability | ) |
| Company; EDWARD KRAEMER & SONS, INC., a | ) |
| Foreign Corporation; KENNY CONSTRUCTION | ) |
| COMPANY, a Foreign Corporation, KENNY- | ) |
| KRAEMER JOINT VENTURE; PLOTE, INC., a | ) |
| Domestic Corporation; PLOTE CONSTRUCTION, INC., | ) |
| a Domestic Corporation; and ROADSAFE TRAFFIC | ) |
| SYSTEMS, INC., a Foreign Corporation,  GFS | ) |
| CONSTRUCTION, LLC; OMEGA & ASSOCIATES, | ) |
| INCORPORATED.; THE RODERICK GROUP, INC., | ) |
| PC; EXP U.S. SERVICES, INC.; THOMAS | ) |
| ENGINEERING GROUP, LLC; ALFRED BENESCH & | ) |
| COMPANY; V3 COMPANIES OF ILLINOIS, LTD.; V3 | ) |
| COMPANIES, LTD.; and BV3 JOINT VENTURE, | ) |
|  | ) |
|         Defendants | ) |
|  | ) |
| (Plote Construction, Inc., and Exp U.S. Services, Inc., | ) |
| Defendants-Appellants; Aaron Nash, Defendant- | ) |
| Appellee). | ) |
| _____ | ) |
|  | ) |
| KEVEN W. SCHMIDT, Individually and as Personal | ) |
| Representative of the Estate of Terri Schmidt, Deceased, | ) |
|  | ) |
|         Plaintiff-Appellee, | ) |
|  | ) |
| v.      (No. 2016-L-010574) | ) |
|  | ) |
| AARON NASH; LYONS LIMOUSINE, LLC; PATRICK | ) |
| RICHARD LYONS; MARY LYONS; ZENITH | ) |
| LIMOUSINE, LLC; EDWARD KRAEMER & SONS, | ) |
| INC.; KENNY CONSTRUCTION COMPANY; | ) |
| KENNY-KRAEMER JOINT VENTURE; PLOTE, INC.; | ) |
| PLOTE CONSTRUCTION, INC.; ROADSAFE | ) |
| TRAFFIC SYSTEMS, INC.; TRAFFIC CONTROL & | ) |
| PROTECTION, INC.; GFS CONSTRUCTION, LLC; | ) |
| OMEGA & ASSOCIATES INCORPORATED; THE | ) |
| RODERICK GROUP INC., PC; EXP U.S. SERVICES, | ) |
| INC.; THOMAS ENGINEERING GROUP, LLC; | ) |
| ALFRED BENESCH & COMPANY; V3 COMPANIES | ) |
| OF ILLINOIS, LTD.; V3 COMPANIES, LTD.; and BV3 | ) |

2

No. 1-18-0840

JOINT VENURE,                                               )
                                                           )
    Defendants                        )
                                                           )
(Plote Construction, Inc., and Exp U.S. Services, Inc.,    )
Defendants-Appellants; Aaron Nash, Defendant-             )
Appellee).                                                 )
_____            )
                                                           )
AARON NASH,                                                )
                                                           )
    Plaintiff-Appellee,                )
                                                           )
    v.    (No. 2017-L-007057)   )
                                                           )
EDWARD KRAEMER & SONS, INC.; KENNY                         )
CONSTRUCTION COMPANY; KENNY-KRAEMER                        )
JOINT VENTURE; PLOTE, INC.; PLOTE                          )
CONSTRUCTION, INC.; ROADSAFE TRAFFIC                       )
SYSTEMS, INC.; TRAFFIC CONTROL &                           )
PROTECTION, INC.; GFS CONSTRUCTION, LLC;                   )
OMEGA & ASSOCIATES INCORPORATED; THE                      )
RODERICK GROUP INC., PC; EXP U.S. SERVICES,               )
INC.; THOMAS ENGINEERING GROUP, LLC;                      )
ALFRED BENESCH & COMPANY; V3 COMPANIES                    )
OF ILLINOIS, LTD.; BV3 JOINT VENTURE; JOHN                )
THOMAS, INC. d/b/a John Thomas Company; ENERGY            )
ABSORPTION SYSTEMS, INC.; TRAFFIC SERVICES,               )
INC.; CHASTAIN & ASSOCIATES, LLC;                         )
CHASTAIN/THOMAS JV; STANLEY                               )
CONSULTANTS, INC.; AECOM SERVICES OF                      )
ILLINOIS, INC.; HNTB CORP.; KEVIN WILLING;               )
STEVE MENKE; and WILLIAM SCHAEFER,                        )
                                                           )
    Defendants                        )
                                                           )
(Exp U.S. Services, Inc., and Plote Construction, Inc.,    )
Defendants-Appellants).                                    )
                                                           )

      JUSTICE GORDON delivered the judgment of the court, with opinion.
      Presiding Justice McBride and Justice Burke concurred in the judgment and
opinion.

**OPINION**

¶ 1        Plaintiffs Michael Johnson, Robert Rosa, Don Corning, Lois Corning, and Keven Schmidt, as well as Terri Schmidt, deceased, were all passengers in a limousine on Interstate 90 (I-90), heading from their home in Wisconsin to O'Hare International Airport, when the limousine, driven by Aaron Nash, crashed into a construction site in Kane County. Of the six passengers, Terri Schmidt was killed, plaintiff Robert Rosa became a paraplegic, and the four other plaintiffs were injured (collectively, the plaintiff passengers).

¶ 2        The plaintiff passengers sued defendants-appellants Exp U.S. Services, Inc., and Plote Construction, Inc., as well as other defendants involved in the construction site, alleging that these defendants failed to post warning signs in the construction area (the construction defendants). In addition, plaintiffs sued Nash, the limousine driver; Lyons Limousine, LLC (Lyons), his employer; and Zenith Limousine, LLC (Zenith), a Wisconsin business with which Lyons was affiliated. The driver, Nash, also sued the construction defendants. The trial court consolidated all the lawsuits.

¶ 3        Out of all the many defendants in the consolidated actions, only two—Exp U.S. Services, Inc., and Plote Construction, Inc.—argue on this appeal that the trial court abused its discretion by denying a *forum non conveniens* motion to transfer the cases from Cook County, where plaintiffs filed their actions, to Kane County, where the accident occurred.[1] These two defendants both have their principal offices in Cook County and, thus, are claiming that their home forum in not convenient for them. For the following reasons, we find no abuse of discretion by the trial court for denying their motion and affirm. See *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 447-49 (2006) (our supreme court

---

[1] Nash, the limousine driver, sided with the plaintiff passengers in this appeal and adopted their brief.

found that the doctrine of *forum non conveniens* did not require the transfer of a wrongful death action to the county in which the collision occurred).

¶ 4                                BACKGROUND

¶ 5        In the case at bar, the plaintiff passengers, who were Wisconsin residents, hired a limousine from defendant Lyons, a Wisconsin business, to transport them on March 25, 2016, from Madison, Wisconsin, to O'Hare International Airport in Cook County. The driver, Nash, was a Lyons's employee and a Wisconsin resident. At 5:30 a.m., the limousine picked up the plaintiff passengers, and almost two hours later, at 7:12 a.m., the limousine collided with a barrier wall at a construction site on I-90, killing one passenger and injuring five others.

¶ 6        The accident report of the responding police officer indicates that the accident occurred after Nash failed to shift lanes to the right, as was compelled by the construction work. The report states that the limousine was driving in the left-hand lane of I-90 eastbound, in the city of Elgin, in Kane County, when all three eastbound lanes were required to shift right. Immediately after the lane shift, temporary concrete barrier walls were positioned along the left lane. The end of the concrete wall was protected by "a crash attenuator," which protects the public from the end of the wall. The report states that Nash told the officer that "the sun was extremely bright," that he had his sun visor lowered, and that he had his hand up to block the sun. Nash informed the officer that the bright sunlight blinded his vision and, as a result, he did not observe either the lane shift or the concrete barriers. As the rest of the

lane shifted right, the limousine continued forward, struck the end of the wall with the crash attenuator, and flipped over on its roof.[2]

¶ 7     Nash testified at his deposition that, seconds before the accident, he observed a sign that said "stay in your lane" on his left side. Nash could not observe any signs on his right side because "semis and SUV's" were blocking his view and he was "in a very low limo." Although he observed the vehicle ahead of him shift to the right lane, he "thought it was merging or switching lanes." Nash did not shift because of the "stay in your lane" sign. Since he knew he was in a construction zone, he was "looking for signs constantly" and he did not observe any signs on his left side that indicated a curve in the road ahead. At the time of the collision, the limo was traveling at the speed of traffic, which was approximately 65 miles per hour, and Nash did not have the opportunity to hit the brakes prior to the collision.

¶ 8     After the accident, the plaintiff passengers filed a total of three actions in Cook County, alleging that defendants Nash, Lyons, and Zenith, were negligent with respect to the operation of the limousine, and the hiring and training of Nash. Their complaints further alleged that the construction defendants, including the two defendants-appellants in this appeal, were negligent in failing to post an adequate number of signs to warn drivers of the lane change. Nash, who was a defendant in the plaintiff passenger suits, also filed a complaint against the construction defendants that sought recovery for his own injuries and also alleged that the construction defendants were negligent in failing to post adequate signs. As we observed above, all four actions were consolidated for both discovery and trial.

---

[2] At his deposition, Nash testified that, in connection with this incident, he pled guilty to a Class 4 felony for not having a commercial driver's license. Also, at his deposition when asked whether he agreed that he was "responsible for this accident," Nash responded, "[y]es, sir."

¶ 9  Initially, 15 of the construction defendants[3] filed or joined *forum non conveniens* motions to transfer the actions to Kane County. Of these 15 defendants, only 5 defendants filed or joined petitions for leave to appeal in the appellate court, which were granted pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. Nov. 1, 2017).[4] However, only two of the five defendants pursued the appeal by filing briefs with this court: Exp U.S. Services, Inc. (Exp) and Plote Constructions, Inc. (Plote).

¶ 10  With respect to these two defendants-appellants, plaintiffs allege in their complaints that Plote is an Illinois corporation with its principal office in Hoffman Estates, Illinois, which is in Cook County, and that Exp is a Delaware corporation.[5]

¶ 11  However, William Schaefer, Exp's resident engineer for the I-90 reconstruction project, testified at his deposition that Exp's main office is on Michigan Avenue, in Chicago, which is in Cook County, and that he has an office there. During the I-90 reconstruction project in 2016, he was normally at the field office in East Dundee, which is located in both Kane and Cook Counties.

¶ 12  Schaefer testified in his deposition that, in December 2015, he, along with Steve Menke, the project manager from Plote, and other defendants, decided to revise the "MOT," or maintenance of traffic plan, for the area where the crash occurred, and to not post certain

---

[3] In addition to the two defendants-appellants, the other construction defendants involved in the *forum non conveniens* motions were Alfred Benesch & Company.; BV3 Joint Venture; RoadSafe Traffic Systems, Inc.; Kenny Construction Company; Edward Kraemer & Sons, Inc.; Kenny-Kraemer Joint Venture; GFS Construction, LLC.; The Roderick Group Inc., Ltd.; Traffic Control & Protection, Inc; Plote, Inc.; V3 Companies of Illinois; V3 Companies, Ltd.; and Energy Absorption Systems, Inc.

[4] Illinois Supreme Court Rule 306(a)(2) (eff. Nov. 1, 2017) permits a party to petition for leave to appeal to the appellate court from certain interlocutory orders, including "from an order of the circuit court allowing or denying a motion to dismiss on the grounds of *forum non conveniens*."

[5] If any of the defendants filed answers in these actions, they are not in the record before us.

advance warning signs.[6] It is these changes that are at the heart of plaintiffs' claims against the two defendants-appellants, and plaintiffs argue that these decisions occurred in Cook County.

¶ 13    Since we must apply an abuse-of-discretion standard to the trial court's *forum non conveniens* decision,[7] we provide here the trial court's findings in detail.

¶ 14    The trial court found

"that the following facts are undisputed:

1. Plaintiffs all reside in Wisconsin;

2. The construction site where the accident occurred is located in Kane County;

3. The Plaintiffs' medical treatment occurred in Cook County, Kane County, and Wisconsin;

4. Some of Defendants' principal place of business are located in Cook County;

5. The great majority of the Defendants derive revenue from business activities located in Cook County;

6. Certain Defendants have litigated cases as both plaintiffs and defendants in other actions filed in the Circuit Court of Cook County; and

7. The witnesses and parties reside, or are located amongst several counties and two states including: Will County, Dupage County, Cook County, Kane County, McHenry County, Lake County, and Wisconsin."

---

[6] Schaefer also testified that Plote was the contractor and, thus, "the one that's responsible for the maintenance of traffic."

[7] As we discuss in more depth in the analysis below, the standard of review for a *forum non conveniens* decision is abuse of discretion. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 442 (2006).

However, after listing the above undisputed facts, the trial court found that one of them was completely irrelevant to the issue. The trial court explicitly found "this Court cannot take Defendants' prior litigation history into account when determining whether transfer is warranted."

¶ 15    With respect to the private interest factors that a court must consider in deciding a *forum non conveniens* motion, the trial court found that these factors either favored Cook County or were neutral.

¶ 16    First, the trial court found that, since plaintiffs do not reside in Cook County, their choice of forum was entitled to less deference but that less deference did not mean no deference as defendants argued. See *Langenhorst*, 219 Ill. 2d at 448 (" ' "the deference to be accorded is only *less*, as opposed to *none*" ' " (emphases in original) (quoting *First American Bank v. Guerine*, 198 Ill. 2d 511, 518 (2002), quoting *Elling v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 311, 318 (1997))). In addition, the trial court found that "[t]he record plainly shows that a great majority of the Defendants in this case either conduct business in Cook County, or are headquartered here." In support, the trial court cited and quoted *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 555 (1992) ("It is all but incongruous for defendants to argue that their own home county is inconvenient.").

¶ 17    Second, in concluding that ease of access to proof slightly favored Cook County, the trial court observed that, although some testimonial and documentary evidence would "arise from" the fact that the scene of the accident was in Kane County and the limousine was stored there, at least one eyewitness lived in Cook County, as did at least 20 medical providers who treated plaintiffs, as well as other damage witnesses. The trial court observed that the brief, initial medical treatment that plaintiffs received in Kane County "pales in

9

comparison" to the treatment they later received in Cook County, which was better equipped to handle their care.

¶ 18    Third, the trial court concluded that the availability of compulsory process favored neither side, since witnesses in Kane County were just as susceptible to Illinois compulsory process as those in Cook County, and cited in support *Bradbury v. St. Mary's Hospital of Kankakee*, 273 Ill. App. 3d 555, 561 (1995) ("process would be available in either county to compel the attendance of any unwilling Illinois resident witnesses pursuant to Supreme Court Rule 237").

¶ 19    Fourth, the trial court found that considerations of the cost of obtaining witnesses slightly favored Cook County, in light of the fact that plaintiffs provided "over 21 sworn affidavits from witnesses who state that it would be more convenient if this case were litigated in Cook as opposed to Kane County," while defendants failed to provide a single affidavit from any witness stating that it would be inconvenient if the case was litigated in Cook County. See *Bradbury*, 273 Ill. App. 3d at 560 ("The record in this case is quite remarkable, not for what it contains, but rather, for what it does not contain. The defendants' *forum non conveniens* motion *** was not supported by any affidavits."). In addition, although first responders from Kane County provided plaintiffs with emergency medical care, so did responders from Du Page and Cook Counties.

¶ 20    Fifth, the trial court found that the possibility of viewing the premises did not weigh in favor of transfer because "the construction zone and the conditions which allegedly caused Plaintiffs' accident are gone," and it cited in support *Blake v. Colfax Corp.*, 2013 IL App (1st) 122987, ¶ 22 (a transfer was not necessary where there was no "condition of the roadway, which is still present for a site inspection," that was a cause of the collision).

¶ 21          Sixth, the trial court found that other practical considerations favored Cook County, since "all of the attorneys of record in this case are located within Cook County," with most of them "in close proximity to the Daley Center," where a trial would occur. See *Langenhorst v. Norfolk Southern Ry. Co.*, 354 Ill. App. 3d 1103, 1116-17 (2004) (although convenience to the litigants' lawyers is not a significant factor, "[a] courtroom blocks away from defense counsel's main office *** is a courtroom that tends to make trial easier, more expeditious, and less expensive for that attorney's client"). The trial court found that plaintiff Rosa, a quadriplegic, needed to be in close proximity to his physicians in Cook County, and required emergency medical care less than a year before. Thus, the trial court found that all the private interest factors favored Cook County or were neutral.

¶ 22          The trial court also found that the public interest factors did not require a transfer. First, with respect to the interest in deciding local matters locally, the trial court found that "this case can be considered a 'local matter' in either Kane or Cook County." Although the accident occurred in a construction site in Kane County, the trial court observed that "Cook County motorists undoubtedly used the expressway and construction project at issue while going to and from Cook County" and defendants managed and undertook similar construction projects in Cook County.

¶ 23          Second, with respect to the interest of not imposing the expense and burden of a trial on a county with little connection to the suit, the trial court found that defendants were headquartered here or had offices here and derived significant revenue from Cook County and that "Cook County citizens definitely have [an] interest in deciding a case involving *** its own corporate residents."

¶ 24      Third, with respect to the issue of docket congestion, the trial court found that, although Cook County was more congested, "cases actually resolved in Cook County quicker than the cases in Kane County and, thus, this factor was inconsequential." See *Guerine*, 198 Ill. 2d at 517 ("Court congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly."); see also *Langenhorst*, 219 Ill. 2d at 452 (the factor of court congestion does not favor transfer where "defendants have not shown that the case would be resolved more quickly in" the other county).

¶ 25      After considering all the public and private interest factors that must be considered in a *forum non conveniens* motion, the trial court denied the motion to transfer the litigation from Cook County to Kane County.

¶ 26      As noted above, this court granted defendants-appellants' petitions for leave to appeal, and this interlocutory appeal followed.

¶ 27                              ANALYSIS

¶ 28      For the following reasons, we cannot find that the trial court abused its discretion in denying defendants-appellants' motion and, thus, affirm.

¶ 29                   I. Standard of Review

¶ 30      "*Forum non conveniens* is an equitable doctrine founded in considerations of fundamental fairness and the sensible and effective administration of justice." *Langenhorst*, 219 Ill. 2d at 441 (citing *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991)). "This doctrine allows a trial court to decline jurisdiction when trial in another forum 'would better serve the ends of justice.' " *Langenhorst*, 219 Ill. 2d at 441 (quoting *Vinson*, 144 Ill. 2d at 310). "*Forum non conveniens* is applicable when the choice is between interstate forums as well as

when the choice is between intrastate forums," such as in the case at bar. *Glass v. DOT Transportation, Inc.*, 393 Ill. App. 3d 829, 832 (2009). The burden is always on the movant to show that the relevant factors strongly favor a transfer. *Koss Corp. v. Sachdeva*, 2012 IL App (1st) 120379, ¶ 106 (the burden is on the movant to show a transfer is strongly favored); *Erwin v. Motorola, Inc.*, 408 Ill. App. 3d 261, 275 (2011) (the burden is on the movant to show a transfer is strongly favored); *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 833 (2006) ("[t]he burden is on a defendant to show that the relevant factors strongly favor the defendant's choice of forum").

¶ 31       The standard of review for a *forum non conveniens* decision is abuse of discretion. *Langenhorst*, 219 Ill. 2d at 442.

¶ 32       "A trial court is afforded considerable discretion in ruling on a *forum non conveniens* motion." *Langenhorst*, 219 Ill. 2d at 441. "We will reverse the circuit court's decision only if defendants have shown that the circuit court abused its discretion in balancing the relevant factors." *Langenhorst*, 219 Ill. 2d at 442 (citing *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 176-77 (2003)). "A circuit court abuses its discretion in balancing the relevant factors only where no reasonable person would take the view adopted by the circuit court." *Langenhorst*, 219 Ill. 2d at 442 (citing *Dawdy*, 207 Ill. 2d at 177); *Glass*, 393 Ill. App. 3d at 832.

¶ 33       "The issue, then, is not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the trial court acted in a way that no reasonable person would." *Vivas v. The Boeing Co.*, 392 Ill. App. 3d 644, 657 (2009). In addition, "we may affirm a trial court's *forum non conveniens* order on any basis found in the record." *Ruch v. Padgett*, 2015 IL App (1st) 142972, ¶ 40.

13

¶ 34                                II. Plaintiff's Choice of Forum

¶ 35        "Before weighing the relevant factors, a court must first decide how much deference to give to a plaintiff's choice of forum." *Vivas*, 392 Ill. App. 3d at 657 (citing *Langenhorst*, 219 Ill. 2d at 448 (the supreme court determined the appropriate amount of deference before weighing the relevant factors)).

¶ 36        It is " 'assumed on a *forum non conveniens* motion that the plaintiff's chosen forum is a proper venue for the action.' " *Langenhorst*, 219 Ill. 2d at 448 (quoting *Dawdy*, 207 Ill. 2d at 182). "Plaintiff's choice of forum is entitled to substantial deference." *Langenhorst*, 219 Ill. 2d at 448; *Guerine*, 198 Ill. 2d at 521 ("the battle over forum begins with the plaintiff's choice already in the lead"). However, when neither the plaintiff's residence nor the site of the injury are located in the chosen forum, the plaintiff's choice is "entitled to *somewhat* less deference." (Emphasis in original.) *Langenhorst*, 219 Ill. 2d at 448; *Guerine*, 198 Ill. 2d at 517. While " ' "the deference to be accorded to a plaintiff regarding his choice of forum is less when the plaintiff chooses a forum other than where he resides *** nonetheless the deference to be accorded is only *less*, as opposed to *none*." ' " (Emphases in original.) *Langenhorst*, 219 Ill. 2d at 448 (quoting *Guerine*, 198 Ill. 2d at 518, quoting *Elling*, 291 Ill. App. 3d at 318). Thus, the trial court did not abuse its discretion by finding that plaintiffs' choice of Cook County was entitled to some deference.

¶ 37                                III. Private Interest Factors

¶ 38        When a court considers a *forum non conveniens* motion, the Illinois Supreme Court held that it must consider both "the private and public interest factors" *Langenhorst*, 219 Ill. 2d at 443; *Dawdy*, 207 Ill. 2d at 172-73; see also *Vivas*, 392 Ill. App. 3d at 658. "[N]o

single factor is controlling." *Erwin*, 408 Ill. App. 3d at 274 (citing *Langenhorst*, 219 Ill. 2d at 443).

¶ 39     First, we consider the private interest factors, which are " '(1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive.' " *Langenhorst*, 219 Ill. 2d at 443 (quoting *Guerine*, 198 Ill. 2d at 516); *Dawdy*, 207 Ill. 2d at 172; see also *Vivas*, 392 Ill. App. 3d at 658.

¶ 40                              A. Convenience to the Parties

¶ 41     First, the convenience of the parties does not weigh in favor of transfer, for the following reasons.

¶ 42     With respect to this factor, "the defendant must show that the plaintiff's chosen forum is inconvenient to the *defendant*." (Emphasis added.) *Langenhorst*, 219 Ill. 2d at 450; *Vivas*, 392 Ill. App. 3d at 658. In other words, "one party cannot argue the other party's convenience." *Ruch*, 2015 IL App (1st) 142972, ¶ 51; *Susman v. North Star Trust Co.*, 2015 IL App (1st) 142789, ¶ 27; see also *Elling*, 291 Ill. App. 3d at 317 (a court may properly consider "the fact that only four of the six defendants joined in the motion to transfer"); *Neofotistos v. Center Ridge Co.*, 241 Ill. App. 3d 951, 957 (1993) (an appellate court may consider a defendant's decision not to seek leave to appeal the denial of a *forum non conveniens* motion).

¶ 43     On this appeal, where both defendants-appellants have their principal offices in Cook County, the convenience of the parties does not weigh in favor of transfer. *Erwin*, 408 Ill. App. 3d at 276 (while a party's principal place of business is not necessarily "dispositive" in a *forum non conveniens* analysis, "it certainly is an acceptable factor to be weighed"); see

also *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 173 (2005) (principal place of business is a "factor to be considered").

¶ 44    Where a defendant has "its headquarters in plaintiffs' chosen forum," the convenience factor does not usually weigh in favor of transfer. *Vivas*, 392 Ill. App. 3d at 658. A party "cannot be heard to complain that his home forum is inconvenient unless other factors are at issue." *Susman*, 2015 IL App (1st) 142789, ¶ 27; *Erwin*, 408 Ill. App. 3d at 276 ("Motorola could not genuinely contend that litigating the case in Illinois, where it maintained its corporate headquarters, would prove inconvenient to it."); *Vivas*, 392 Ill. App. 3d at 658 (the convenience of the parties did not weigh in favor of transfer, where "defendant Boeing has its headquarters" in Illinois).

¶ 45    At oral argument, when asked to cite cases where this court found that a defendant's home forum was nonetheless inconvenient to it, defendants-appellants cited *Susman*, 2015 IL App (1st) 142789, and *Bruce v. Atadero*, 405 Ill. App. 3d 318 (2010). However, neither case supports defendants-appellants' argument. First, *Susman* involved the *opposite* procedural posture from the case at bar. In *Susman*, the trial court had *granted* the defendant's *forum non conveniens* motion to transfer the case from Cook County, where the defendant was headquartered, to Lake County, which was the location of both the disputed real estate and the plaintiff's residence. *Susman*, 2015 IL App (1st) 142789, ¶¶ 1, 27-28. We found, on appeal, that the "plaintiff cannot be heard to complain that his home forum is inconvenient" and, thus, the trial court did not abuse its discretion by granting the transfer. *Susman*, 2015 IL App (1st) 142789, ¶ 27. Similarly, in the case at bar, where the procedural posture is reversed and we are reviewing a denial instead of a grant, defendants-appellants cannot be heard to

complain that their home forum is inconvenient, and we cannot find an abuse of discretion by the trial court. Thus, *Susman* does not support defendants-appellants' argument.

¶ 46     *Bruce* is even less persuasive. In *Bruce*, the plaintiff brought wrongful death and survival claims in McHenry County against the hospital that treated the decedent in McHenry County and against the treating physician who resided and practiced in McHenry County. *Bruce*, 405 Ill. App. 3d at 319-20. After discovery had proceeded for almost two years in McHenry County, the plaintiff voluntarily dismissed the McHenry County action and refiled in Cook County, where the hospital also had some facilities. *Bruce*, 405 Ill. App. 3d at 320. This court reversed the trial court's denial of the defendants' *forum non conveniens* motions on several grounds but primarily due to the blatant "forum shopping that our supreme court has expressly held should not be permitted." *Bruce*, 405 Ill. App. 3d at 332. In the case at bar, there are no issues of filing and refiling, as there were in *Bruce*. In addition, in *Bruce*, both defendants resided in McHenry County, where this court ordered the case transferred back to. *Bruce*, 405 Ill. App. 3d at 319-20. Similarly, in the case at bar, both defendants-appellants have their principal offices in Cook County, where this court affirms the case should continue. Thus, *Bruce* also does not support defendants-appellants' argument.

¶ 47     In sum, this factor does not favor transfer.

¶ 48                              B. Ease of Access to Evidence

¶ 49     The trial court did not abuse its discretion by concluding that the ease of access to evidence did not favor transfer, for the following reasons. See *Langenhorst*, 219 Ill. 2d at 443.

¶ 50     First, defendant has not identified on this appeal a single witness by name who would be unwilling to testify in Illinois. In *Erwin*, 408 Ill. App. 3d at 277, this court considered a

17

*forum non conveniens* motion where the defendant failed to provide the name or address of a single witness who would be unwilling to testify in Illinois, and the trial court denied the motion. We found that, "[s]ince the burden of proof lies with [the defendant], under these circumstances," we will not "speculate about a witness's *** unwillingness to testify at trial" in order to find an abuse of discretion. *Erwin*, 408 Ill. App. 3d at 277. While a trial court is within its discretion to consider the inconvenience of witnesses without affidavits from each witness (*Koss*, 2012 IL App (1st) 120379, ¶¶ 106-07), the possibility of inconvenience wanes when the counties are adjacent,[8] and the burden remains, at all times, on the defendant to provide proof showing that the requested transfer is strongly favored. See *Koss*, 2012 IL App (1st) 120379, ¶ 106 (the burden is on the party seeking transfer to prove that the relevant factors strongly favor it); *Erwin*, 408 Ill. App. 3d at 274-75.

¶ 51    Second, as the trial court observed, viewing the accident scene is no longer an option since the construction site, with its particularized lanes and signs, is simply gone. For example, in *Vivas*, this court found that "this factor is not as significant where the accident site has 'substantially changed' since the accident." *Vivas*, 392 Ill. App. 3d at 659-60. The *Vivas* court observed that, "years later, the construction has likely been completed or has at least proceeded to an extent that the appearance *** has changed significantly since the date of the crash. *** Thus, we cannot find that the trial court abused its discretion in giving little weight to this factor." *Vivas*, 392 Ill. App. 3d at 660. The same is true in the case at bar. See also *Blake*, 2013 IL App (1st) 122987, ¶ 22 (a transfer was not necessary where there was no

---

[8] Defendants-appellants state in their appellate briefs that the accident scene is 14.8 miles from the Kane County courthouse and 37.9 miles from "the Cook County courthouse," which makes "the Cook County courthouse" less than 15 miles further away. (Although there are a number of courthouses in Cook County, defendants-appellants appear to be referring to the Daley Center.)

"condition of the roadway, which is still present for a site inspection," that was a cause of the collision).

¶ 52    Third, "the location of documents, records and photographs has become a less significant factor in *forum non conveniens* analysis in the modern age of e-mail, Internet, telefax, copying machines and world-wide delivery services, since they can now be easily copied and sent." *Vivas*, 392 Ill. App. 3d at 659; see also *Erwin*, 408 Ill. App. 3d at 281 ("it has become well recognized by our courts that given our current state of technology *** documentary evidence can be copied and transported easily and inexpensively"); *Woodward*, 368 Ill. App. 3d at 834 ("the location of documents is not significant because documents can be transported with ease and at little expense"); *Glass*, 393 Ill. App. 3d at 836-37 ("there should be little difficulty encountered in securing documentary evidence, given that current technology allows documents to be copied and transported easily and inexpensively"); *Ammerman v. Raymond Corp.*, 379 Ill. App. 3d 878, 890 (2008) ("the location of documentary evidence has become less significant because today's technology allows documents to be copied and transported easily and inexpensively"). Thus, this factor also does not favor transfer.

¶ 53    In sum, where "potential witnesses and evidence [are] scattered among different" forums, we cannot find that the trial court abused its discretion in concluding that this factor "did not tilt in favor" of transfer. *Vivas*, 392 Ill. App. 3d at 659; see also *Erwin*, 408 Ill. App. 3d at 280 (defendant Motorola "failed in its burden to establish that the relative ease of obtaining such 'scattered' testimonial evidence weighed strongly in favor of dismissal and transfer"); *Woodward*, 368 Ill. App. 3d at 834 (where "potential trial witnesses are scattered

among different forums, including the plaintiffs' chosen forum," this factor does not favor transfer).

¶ 54                                    C. Practical Problems

¶ 55        The last private interest factor is a consideration of " 'all other practical problems that make trial of a case easy, expeditious, and inexpensive.' " *Langenhorst*, 219 Ill. 2d at 443 (quoting *Guerine*, 198 Ill. 2d at 516-17); *Dawdy*, 207 Ill. 2d at 172; see also *Vivas*, 392 Ill. App. 3d at 658.

¶ 56        First, when the issue is moving a suit from Cook County to an adjacent county, this court has previously found that the factor of practical problems is not usually a strong factor favoring transfer. For example, with respect to nearby Lake County, this court has previously written:

> "This court, which is located in Chicago, Cook County, may take judicial notice of the fact that Lake County is adjacent to Cook County and that many people commute every day from Lake County to work in Chicago. Ill. R. Evid. 201(b) (eff. Jan. 1, 2011) ('A judicially noticed fact must be one not subject to reasonable dispute in that it is *** generally known within the territorial jurisdiction of the trial court ***.'); Ill. R. Evid. 201(c) (eff. Jan. 1, 2011) ('A court may take judicial notice, whether requested or not.'). The close proximity of the two counties, and the many roads and trains between the two, reduces any practical problems. *Spiegelman v. Victory Memorial Hospital*, 392 Ill. App. 3d 826, 844 (2009) (observing 'the close proximity of Lake County to Cook County'); *Huffman v. Inland Oil & Transport Co.*, 98 Ill. App. 3d 1010, 1018 (1981) ('arguments regarding convenience to the parties and the

20

witnesses [are] of little merit where the Missouri forum suggested by defendant was only 15 miles from the chosen forum')." *Susman*, 2015 IL App (1st) 142789, ¶ 31.

¶ 57   Second, while little weight should be accorded to the location of the movant's attorney on a *forum non conveniens* motion, "a court may still consider it in the *forum non conveniens* analysis." *Vivas*, 392 Ill. App. 3d at 660; see also *Dawdy*, 207 Ill. 2d at 179 ("a court may consider this factor"); *Woodward*, 368 Ill. App. 3d at 835 ("We also note that the defendants' counsel of record have offices in Illinois. Although not a significant factor, we may consider it in our analysis."). As the trial court observed, all the attorneys of record in the court below were in Cook County.

¶ 58   Lastly, we agree with the trial court's finding that claims based on "a defendant's prior litigation experience *** lack[ ] merit." *Ammerman*, 379 Ill. App. 3d at 888. This is "because *forum non conveniens* claims are heavily dependent upon the facts of each case and accordingly 'must be decided pursuant to an "individualized, case-by-case consideration of convenience and fairness." ' " *Ammerman*, 379 Ill. App. 3d at 888 (quoting *Gridley*, 217 Ill. 2d at 168, quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

¶ 59   For all the foregoing reasons, we find that the trial court did not abuse its discretion in finding that the private interest factors did not favor transfer.

¶ 60                                      IV. Public Interest Factors

¶ 61   When deciding a *forum non conveniens* motion, a court must also consider the public interest factors. These factors include: "(1) the interest in deciding controversies locally; (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation; and (3) the administrative difficulties presented by adding litigation to already congested court dockets." *Langenhorst*, 219 Ill. 2d

at 443-44 (citing *Guerine*, 198 Ill. 2d at 516-17); *Gridley*, 217 Ill. 2d at 170; *Dawdy*, 207 Ill. 2d at 173; see also *Vivas*, 392 Ill. App. 3d at 660.

¶ 62    First, we consider the respective forums' interests in deciding these controversies and the fairness of imposing jury duty on the forums' residents. In *Langenhorst*, our supreme court affirmed a trial court's decision not to transfer a case from St. Clair County to Clinton County, which was the scene of the accident. *Langenhorst*, 219 Ill. 2d at 451, 454. In considering the respective forums' interest, the court observed that St. Clair County had as much interest in the controversy as Clinton County, because "this same railway line" involved in the accident "bisects all of St. Clair County." *Langenhorst*, 219 Ill. 2d at 451. The same is equally true of I-90 and Cook County.

¶ 63    Lastly, we must consider "the administrative difficulties presented by adding litigation to already congested court dockets." *Langenhorst*, 219 Ill. 2d at 443-44 (citing *Guerine*, 198 Ill. 2d at 516-17). However, "[c]ourt congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly." *Guerine*, 198 Ill. 2d at 517.

¶ 64    In its brief to this court, defendants-appellants criticize the trial court for relying on 2015 statistics, when the 2016 Annual Report of the Illinois Courts was released on January 31, 2017, which was well before the trial court's decision on April 6, 2018. Defendants-appellants ask us to take judicial notice of the 2016 report, which we do.

¶ 65    However, the 2017 Annual Report of the Illinois Courts, which was released on January 31, 2018, was also available prior to the trial court's April 6, 2018, decision, and we take judicial notice of that as well—and it does not support defendants-appellants' argument. For completeness's sake, we provide the relevant statistics for all three years.

¶ 66        First, as the trial court observed, cases actually resolved faster in Cook County than in Kane County in 2015—40.2 months versus 41.7 months. The 2015 Annual Report of the Illinois Courts showed that there were only 6 jury verdicts in Kane County in the law division over $50,000 and 457 such verdicts in Cook County but that the time lapse from the date of filing to the date of verdict for such cases was 41.7 months in Kane County but only 40.2 months in Cook County. Admin. Office of the Ill. Courts, Annual Report of the Illinois Courts: Statistical Summary—2015, 59 (2016), http://www.illinoiscourts.gov/SupremeCourt/ AnnualReport/2015/2015_Statistical_Summary.pdf [https://perma.cc/2A2U-DMK9]. Thus, Cook County completed such cases faster than Kane County.

¶ 67        But in 2016, as defendants-appellants point out, these cases resolved faster in Kane County than in Cook County—37.8 months versus 29.9 months. The 2016 Annual Report of the Illinois Courts showed that there were only 9 jury verdicts in law division cases above $50,000 in Kane County and 378 such verdicts in Cook County and that the time lapse for such cases was 29.9 months for Kane County and 35 months in Cook County. Admin. Office of the Ill. Courts, Annual Report of the Illinois Courts: Statistical Summary—2016, 59 (2017), http://www.illinoiscourts.gov/SupremeCourt/AnnualReport/2016/2016_Statistical_ Summary.pdf [https://perma.cc/B39R-ULY4]. Thus, in 2016, Kane County was over 5 months faster in completing such cases.

¶ 68        But the situation changes again when we look at 2017. In 2017, Cook County completed such cases at a faster pace, as it did in 2015, the year that the trial court used in its analysis. The 2017 Annual Report of the Illinois Courts showed that there were only 11 jury verdicts in Kane County in the law division over $50,000 and 400 such verdicts in Cook County but that the time lapse from the date of filing to the date of verdict for such cases was

38.3 months in Kane County but only 32.2. months in Cook County. Admin. Office of the Ill. Courts, Annual Report of the Illinois Courts: Statistical Summary—2017, 59 (2018), http://www.illinoiscourts.gov/SupremeCourt/AnnualReport/2018/2017_Statistical_Summary _Final.pdf [https://perma.cc/ZT2N-Y7XY]. Thus, Cook County was faster for such cases in 2017.

¶ 69    What we learn from these constantly changing statistics is that this factor is irrelevant with respect to these two counties at this point in time.

¶ 70    Thus, for all the reasons that the trial court discussed in its own order and for all the additional reasons that we discussed above, we cannot find that the trial court abused its discretion in finding that the public and private factors did not require a transfer to Kane County.

¶ 71                                  CONCLUSION

¶ 72    With respect to defendants-appellants' *forum non conveniens* motion, we have carefully considered and weighed every factor in the *forum non conveniens* doctrine, and we cannot find that the trial court abused its discretion by denying defendants-appellants' motion.

¶ 73    Affirmed.