485 P.2d 739

Richard D. BORDEN and Ralph Barry Borden, Plaintiffs-Appellees,

v.

CREAMLAND DAIRIES, INCORPORATED and Woodrow Wilson Fox, Defendants-Appellants.

No. 601.

Court of Appeals of New Mexico.

May 14, 1971.

J. J. Monroe, Joe Diaz, Iden & Johnson, Albuquerque, for defendants-appellants.

John P. Salazar, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for plaintiffs-appellees.

OPINION

SPIESS, Chief Judge.

This action resulted from a collision between a moving automobile and a parked truck. The automobile was owned by plaintiff, Richard D. Borden, and was being driven by his son, Ralph Barry Borden (Barry). The truck was owned by Creamland Dairies, Incorporated, and was being used at the time in the delivery of milk, or milk products, by its employee, Woodrow Wilson Fox (Fox). The defendants have appealed from a judgment adverse to them, which was rendered upon a jury verdict. We affirm.

Although two points are raised upon appeal the decisive question is whether the trial court erred in declining to hold Barry guilty of contributory negligence as a matter of law.

Facts considered in the light most favorable to Barry, Garcia v. Barber's Super Markets, Inc., 81 N.M. 92, 463 P.2d 516, (Ct.App.1969), are as follows: Prior to the collision Barry was driving the automobile in an easterly direction on Lomas Blvd., N.E. in Albuquerque, New Mexico, and defendant, Fox, had parked and left the Creamland truck in the southmost lane of the three eastbound lanes of Lomas Blvd. at a point approximately four hundred feet west from the intersection of Lomas and Girard Blvd. N.E. At the time, Fox was making delivery of milk, or milk products

in the area. The accident occurred at approximately 6:00 o'clock A.M., when the sun was rising over the mountains to the east; Barry had decided to turn right onto Girard upon reaching its intersection with Lomas. He turned the vehicle into the southmost lane of traffic and collided with the rear end of the truck. It appears from the record that there were tall trees extending along Girard Boulevard from a point near its intersection with Lomas. The rising sun behind these trees created a shaded condition on Lomas Blvd. in the area where the Creamland truck was parked. It is disclosed from the testimony that the glare of the rising sun, together with the shade cast by the trees, created a blind spot where the truck was located which prevented Barry from seeing it. Concerning this situation he testified:

"Q How would you describe the sun, the sun's brilliance on that morning?

"A I would say momentarily blinding, would be my words. I mean you could see ahead quite frequently, but at various times there was—it shone so that it created blind spots."

In further response to questions relating to the visibility of the truck Barry testified:

"A Well, my idea is that I feel that because of the sun that was in my eyes and because that truck was over in the shaded area that it actually created a blind spot somewhat similar to looking from a light room into a dark room, and that is what I think. That is what I would call the other reason which I meant at that time.

\* \* \* \* \* \*

"Well, I don't know if you know exactly what I am talking about, but what it actually does, like that, it almost makes a blind spot rather than not being able to see, and so you would say that it was blinding. It makes it appear as if things were not there, so you cannot see the things that are there. Although you can kind of see in that direction, it looks like there is nothing there."

The following testimony, we think, is likewise relevant.

"Q And as you proceeded up Lomas toward the mountains, had you seen the milk truck at any time before you collided with him?

"A No, sir. I saw it just a very split second before impact, just enough to actually be aware that there was something there that we hit."

Defendants argue that a motorist blinded by lights must either stop (if his vision is cut off completely), or proceed at such rate of speed and with such control of his vehicle as to be able to stop in time to avoid any discernible object in the road ahead.

They have called our attention to a number of cases from other jurisdictions holding that circumstances similar to those involved here constitute negligence as a matter of law.

In substance, defendants contend that it is negligence as a matter of law to drive an automobile at such rate of speed that it cannot be stopped within the range of the driver's vision. This doctrine has been rejected in this jurisdiction. In Worrick v. Alarid, 75 N.M. 67, 400 P.2d 627 (1965), commenting upon the rule under consideration here, the court said:

"Although this court has refused to lay down a rule that a defendant is negligent per se if he cannot stop within the range of his vision, we have held that this constitutes a question for the jury."

Citing Duncan v. Madrid, 44 N.M. 249, 101 P.2d 382 (1940); Hisaw v. Hendrix, 54 N.M. 119, 215 P.2d 598, 22 A.L.R.2d 285 (1950). The court further said:

"We do not now intend to retreat from this position."

Again the Supreme Court, in Manufacturers & Wholesalers Idem. Exch. v. Valdez, 75 N.M. 363, 404 P.2d 562 (1965), commented as follows:

"The rule that a defendant is negligent per se if he cannot stop within the range of his vision has not been laid down in

this jurisdiction, notwithstanding the appellant's position to the contrary. We have held that the issue of negligence in such a situation is a question for the trier of the facts."

■ Whether Barry's conduct in proceeding when his vision was interfered with should preclude recovery on his part involves consideration of a number of factors, including the extent to which vision was interfered with; the speed and precaution taken to avoid the accident; the amount of warning available upon approaching the parked truck. The existence and effect of these elements present a question for decision by the jury. The trial court, in our opinion, correctly declined to hold Barry guilty of contributory negligence as a matter of law.

Defendants, in support of their position, rely upon Williams v. Neff, 64 N.M. 182, 326 P.2d 1073 (1958). It is also contended that the trial court erred in declining to give a particular instruction requested by defendants.

■ The instruction expresses the rule set forth in *Williams*. In our opinion, the facts in *Williams* are not comparable to those presented here because *Williams* involved a situation where the driver's vision became completely obscured. The rule there announced is " * * * if his (the motorist) vision becomes completely obscured, the situation certainly imposes the duty to stop." That situation, as we have shown, is not present here. The trial court correctly declined to give defendants' requested instruction.

We do not consider the other point raised by defendants because it is based upon the assumption that we hold Barry to have been guilty of contributory negligence as a matter of law.

The judgment is affirmed.

It is so ordered.

WOOD and SUTIN, JJ., concur.