2024 IL App (1st) 210941-U

(consolidated with Nos. 21-0958, 21-0959 & 21-0961)

Order filed February 8, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MICHAEL JOHNSON, ROBERT ROSA, DON CORNING, LOIS CORNING, and KEVIN W. SCHMIDT, individually and as special administrator for the Estate of TERRI L. SCHMIDT, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ILLINOIS STATE TOLL HIGHWAY AUTHORITY; EXP U.S. SERVICE, INC.; PLOTE CONSTRUCTION INC.; TRAFFIC CONTROL & PROTECTION, INC.; OMEGA & ASSOCIATES INCORPORATED; ALFRED BENESCH & COMPANY; V3 COMPANIES OF ILLINOIS LTD; BV3 JOINT VENTURE; AECOM TECHNICAL SERVICES, INC.; THE RODERICK GROUP INC., PC; HNTB CORP.; CHASTAIN & ASSOCIATES LLC; THOMAS ENGINEERING GROUP, LLC; CHASTAIN/THOMAS JV; KENNY CONSTRUCTION COMPANY; EDWARD KRAEMER & SONS, INC.; KENNY-KRAEMER JOINT VENTURE; ROADSAFE TRAFFIC SYSTEMS, INC.; TRAFFIC SERVICES, INC.; STV INCORPORATED; LORIG CONSTRUCTION COMPANY; STANLEY CONSULTANTS INC.; AARON NASH; AND LYONS LIMOUSINE LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 18 L 008881 |
| Defendants, | ) ) | |
| (Michael Johnson and Robert Rosa, | ) ) | |
| Plaintiffs-Appellants, | ) | |

Nos. 1-21-0941, 1-21-0958, 1-21-0959 & 1-21-0961 (cons.)

| | |
|---|---|
|     v. | ) |
| | ) |
| Illinois State Toll Highway Authority; EXP U.S. Service, Inc.; | ) |
| Plote Construction Inc.; Traffic Control & Protection, Inc.; | )    Honorable |
| Omega & Associates Incorporated; Alfred Benesch & Company; | )    Rena Van Tine, |
| V3 Companies of Illinois LTD; BV3 Joint Venture; Aecom | )    Judge, Presiding. |
| Technical Services, Inc.; The Roderick Group Inc., PC; HNTB | ) |
| Corp.; Chastain & Associates LLC; Thomas Engineering Group, | ) |
| LLC; Chastain/Thomas JV; Kenny Construction Company; | ) |
| Edward Kraemer & Sons, Inc.; Kenny-Kraemer Joint Venture; | ) |
| Roadsafe Traffic Systems, Inc.; Traffic Services, Inc.; STV | ) |
| Incorporated; Lorig Construction Company; and Stanley | ) |
| Consultants, Inc. | ) |
| | ) |
|     Defendants-Appellees). | ) |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court erred in granting summary judgment in favor of appellees on the issue of proximate cause. In addition, since the trial court never considered or ruled on the alternative issues appellees raised in their motions for summary judgment, we remand these issues to give counsels the opportunity to present their arguments so the trial court can then make its findings and enter its determination. Accordingly, we reverse the trial court's order granting summary judgment on the issue of proximate cause and remand for further proceedings consistent with this order.

¶ 2    This consolidated appeal stems from a single-vehicle accident involving a limousine that crashed into an impact attenuator and overturned onto its roof.[1] The accident occurred on Interstate 90 (I-90) in Kane County after the vehicle failed to shift lanes and drove into an active construction and renovation project. Plaintiffs Michael Johnson, Robert Rosa, Don Corning, Lois Corning, Kevin W. Schmidt, and Terri L. Schmidt were passengers in the limousine, which was driven by codefendant Aaron Nash (Nash). All were injured, and Terri L. Schmidt was killed.

---

[1]An impact attenuator, or crash cushion, is a barrier installed on a roadway to lessen the impact of a vehicle collision.

2

¶ 3    The trial court entered summary judgment in favor of appellees based upon its finding that Nash's negligent driving was the sole proximate cause of the accident. For the reasons that follow, we reverse and remand for further proceedings.[2]

¶ 4                               I. BACKGROUND

¶ 5                        A. Roadway Reconstruction Project

¶ 6    In 2015, construction work commenced on a stretch of the Jane Addams Memorial Tollway (I-90). The construction project was divided into construction corridors and each corridor was subdivided into sections, one of which was section 4104, where the accident occurred.

¶ 7    Pursuant to the Original Maintenance of Traffic Plan (MOT), eastbound traffic through section 4104 followed a lane split configuration where the far left lane was designated an express lane that continued straight, while the center and right lanes shifted to the right. The original MOT also called for the erection of a temporary continuous curved concrete barrier leading to the lane shift.

¶ 8    In 2016, the configuration of section 4104 was changed to the one in place at the time of the accident. The left express lane was eliminated, and all three lanes shifted right. In addition, the decision was made not to erect the temporary continuous curved concrete barrier at the beginning of the lane shift, but instead leave a gap between the median and lane shift and install an impact attenuator at the end of the existing barrier, exposing oncoming eastbound traffic to the blunt end of the impact attenuator. These revisions to the original MOT are at the heart of appellants' claims. See *Johnson v. Nash*, 2019 IL App (1st) 180840, ¶ 12.

¶ 9                               B. The Accident

_____

[2]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

¶ 10    In the early morning hours of March 25, 2016, Nash was driving the plaintiffs from Madison, Wisconsin to O'Hare International Airport in Chicago, Illinois. Nash was proceeding in the left-hand lane, eastbound on I-90, at or near milepost 55.8 in the city of Elgin, Kane County, when he missed a lane shift to the right and drove into the active highway construction zone. The limousine struck an orange construction barrel and then the impact attenuator, causing the vehicle to overturn onto its roof. *Nash*, 2019 IL App (1st) 180840, ¶¶ 1, 5-6. Terri L. Schmidt was killed in the accident and Robert Rosa was rendered a paraplegic. The remaining passengers and Nash suffered injuries.[3]

¶ 11                              C. The Complaints and Court Proceedings

¶ 12    Plaintiffs filed amended complaints asserting two theories of negligence. The first was predicated on the alleged omission of warning signs preceding the roadway curve; the second was based on the alleged omission of proper roadway barriers.

¶ 13    Plaintiffs alleged that the removal of lane shift warning signs—in advance of the roadway curve—mandated by the federal Manual on Uniform Traffic Control Devices (MUTCD), as well as the project contract, caused Nash to miss the lane shift. Plaintiffs further alleged that the accident could have been avoided if appellees had followed the original MOT. Plaintiffs alleged that the placement of the impact attenuator at the end of the far left lane of eastbound traffic just prior to lane shift, rather than a curved concrete barrier, was one of the proximate causes of the accident.

¶ 14    The amended complaints made allegations of negligence common to all appellees. The allegations asserted that appellees: failed "to provide adequate barriers to deflect oncoming traffic at or near the area of Mile Post 55.8;" allowed "a traffic configuration or pattern at or near the area

_____

[3]Four lawsuits were filed as result of the accident: *Johnson v. Nash*, Case No. 16 L 3443; *Corning v. Nash*, Case No. 16 L 5389; *Schmidt v. Nash*, Case No. 16 L 10574; and *Nash v. Edward Kraemer & Sons, Inc.*, Case No. 17 L 7057. These lawsuits were amended several times and subsequently consolidated.

of Mile Post 55.8 to exist that was unreasonably dangerous;" failed "to place temporary traffic control in advance of the lane shift at or near the area of Mile Post 55.8;" and allowed "the removal of temporary traffic control that warned motorists of the lane shift at or near the area of Mile Post 55.8."

¶ 15    Additional allegations of negligence were made against the appellees who were contracted to design, evaluate, and approve plans for the reconstruction project[4]: "[d]esigned, reviewed and/or approved traffic plans for project 4104 that were dangerous and unsafe;" "[d]esigned, reviewed and/or approved traffic plans for project 4104 which had an impact attenuator and an area of ingress/egress instead of temporary concrete barrier intersecting or tapering with the median barrier wall;" failed "to do an analytical evaluation for the placement of the impact attenuator;" failed "to do a Barrier Warrant Analysis for the placement of the impact attenuator;" and failed "to provide adequate barriers to deflect oncoming traffic at or near the area of Mile Post 55.8."

¶ 16    Appellees filed separate motions for summary judgment based on various grounds, including lack of duty and proximate cause. Regarding proximate cause, appellees argued that Nash's reckless driving was an intervening and superseding cause of the crash, which broke any causal connection between their alleged negligence and the accident. Appellees pointed out that not only was Nash recklessly speeding, with the sun in his eyes, at the time of the crash, but Nash did not possess a commercial driver's license (CDL) to operate a limousine in Illinois. Plaintiffs, in turn, filed a joint response arguing that appellees' acts and omissions were a concurrent proximate cause of the accident, and appellees filed a joint reply.

¶ 17    On June 25, 2021, the trial court scheduled a hearing on appellees' motions for summary

_____

[4]Illinois State Toll Highway Authority, Alfred Benesch & Co., V3 Companies of Illinois Ltd., BV3 Joint Venture, AECOM Technical Services, Inc., HNTB Corp., and Stanley Consultants, Inc.

judgment, limited to the issue of proximate cause. Following the July 14, 2021 hearing, the trial court granted summary judgment to all appellees, finding that Nash's negligence was the sole proximate cause of the accident. The court stated in part:

"So as I said, it's undisputed that Nash was a cause of the accident. Was it reasonably foreseeable to his co-defendants that he was underage to be driving a limousine? Was it reasonably foreseeable that he was not properly qualified to do so, that he was not old enough to legally obtain a CDL, and that he was not familiar with the basic principal that he had to slow down when the sun was in his eyes?

So all this together with going more than the designated 45 miles per hour in the construction zone while he was tired, despite being warned by Mr. Corning that he was going way too fast, he also ignored the visual cues to change lanes. So was it reasonably foreseeable to the defendants that this kid driving the limo would fail to slow down despite his passenger requesting him to do so?

\* \* \*

There is a continuum here, and it is more – there's no case that has exactly the same fact pattern, but I think I find that it is in the part of the continuum that the defendants cite. Nash's intervening action was so beyond the ordinary expectation of drivers, that I find that his co-defendants could not be reasonably expected to anticipate them.

\* \* \*

So I don't reach the question of whether the co-defendants were negligent, because even if they were, and I don't – well, other issues raised about the duty, because the gap in the proximate cause chain rises to the level of granting the motion for summary judgment on the proximate cause part of the case, vis-a-vis Nash."

6

¶ 18    The trial court entered a written order reflecting this finding on July 16, 2021. The order included Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) language finding there was no just reason for delaying enforcement or appeal of the order. These consolidated appeals followed.

¶ 19    Appellants subsequently filed a motion in this court requesting an order limiting the issues on appeal to the trial court's ruling on proximate cause and excluding the issues the trial court held in abeyance, such as duty and breach. In an order entered August 8, 2022, another panel of this court denied appellants' request to restrict the scope of this appeal to the trial court's ruling on proximate cause. Upon our *sua sponte* reconsideration, we find the order was improvidently entered and therefore we vacate it.

¶ 20    Here, the trial court determined at the summary judgment hearing that Nash's conduct was the sole proximate cause of the accident as a matter of law. The court never ruled on or considered any of the alternative issues raised in the motions for summary judgment. We decline to address these issues in the first instance on appeal. See *Kramer v. Szczepaniak*, 2018 IL App (1st) 171411, ¶ 77. "Our function as an appellate court is to review the rulings, orders or judgments of the court below." *Board of Education of the City of Chicago v. Chicago Teachers Union, Local 1*, 26 Ill. App. 3d 806, 813 (1975). "[W]e will not consider issues that the trial court refused to decide unless we are asked to decide whether the refusal to act was an abuse of judicial discretion, which we have not been asked to do." (Internal citation omitted.) *Peppers Construction Company v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 81. Therefore, we decide this appeal only on the issue of proximate cause.

¶ 21                                    II. ANALYSIS

¶ 22    The trial court granted summary judgment in favor of appellees based on its finding that Nash's negligence was the sole proximate cause of the accident.

¶ 23                                    A. Summary Judgment

¶ 24    "The purpose of summary judgment is to determine whether a genuine issue of material fact exists that would require a trial." *Hodges v. St. Clair County*, 263 Ill. App. 3d 490, 492 (1994). "While use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and therefore should be allowed only where the right of the moving party is clear and free from doubt." (Internal citation omitted.) *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986).

¶ 25    Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILC 5/2-1005(c) (West 2012). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993).

¶ 26    "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "Although the plaintiff need not prove his case at the summary judgment stage, he must present sufficient evidence to create a genuine issue of material fact." *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 470 (2010). Our review of a summary judgment order is *de novo*. *Adams*, 211 Ill. 2d at 43.

¶ 27                          B. Proximate-Cause Element of Negligence

¶ 28    "Proximate cause is one of three elements a plaintiff must prove to succeed in a negligence action." *Hooper v. County of Cook*, 366 Ill. App. 3d 1, 6 (2006). "To recover damages based upon

negligence, a plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injury." *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010). "The issue of proximate cause is ordinarily a question of fact to be determined by the trier of fact." *Schultz v. St. Clair County*, 2022 IL 126856, ¶ 37. The issue, however, "may be determined as a matter of law by the court where the facts as alleged show that the plaintiff would never be entitled to recover." *Id.*

¶ 29     "Proximate cause has been defined as that cause which, in natural or probable sequence, produces the complained of injury." *Bogovich v. Nalco Chemical Co.,* 213 Ill. App. 3d 439, 441 (1991). Proximate cause "describes two distinct requirements: cause in fact and legal cause, which is a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm." *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). Here, we are concerned with legal cause, which is an objective inquiry. *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 34. "The touchstone of legal causation is foreseeability." *Kramer v. Szczepaniak*, 2018 IL App (1st) 171411, ¶ 36. "Legal cause is established if an injury was foreseeable as the type of harm that a reasonable person would expect to see as a likely result of his or her conduct." *Hooper*, 366 Ill. App. 3d at 7.

¶ 30     There can be more than one proximate cause of a plaintiff's injury. *Ghostanyans v. Goodwin*, 2012 IL App (1st) 192125, ¶ 93. When a fact pattern gives rise to the possible concurrent negligence of multiple parties, our supreme court has recognized a subset of proximate cause cases involving injuries caused by the intervening acts of third parties. See *Schultz*, 2022 IL 126856, ¶ 38; *Abrams v. City of Chicago*, 211 Ill. 2d 251, 259 (2004); *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 259 (1999). These cases "distinguish between the cause of an injury and a condition that merely made the injury possible." *Inman v. Howe Freightways, Inc.*, 2019 IL App

Nos. 1-21-0941, 1-21-0958, 1-21-0959 & 1-21-0961 (cons.)

(1st) 172459, ¶ 64.

¶ 31    "[I]f the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury." *Galman*, 188 Ill. 2d at 257 (citing *Briske v. Village of Burnham*, 379 Ill. 193, 199 (1942); *Merlo v. Public Service Co.*, 381 Ill. 300, 316 (1942); and *Thompson v. County of Cook*, 154 Ill. 2d 374, 383 (1993)). "The subsequent independent act becomes the effective intervening cause which breaks the causal connection, and itself becomes the proximate cause." *Kemp v. Sisters of the Third Order of St. Francis*, 143 Ill. App. 3d 360, 361 (1986).

¶ 32    The test is whether the first wrongdoer should have reasonably foreseen the intervening act as a natural and probable result of its own negligence. *Galman*, 188 Ill. 2d at 257; *Cahnman v. Timber Court LLC*, 2021 IL App (1st) 200338, ¶ 89; *Kramer v. Szczepaniak*, 2018 IL App (1st) 171411, ¶ 37. An intervening act will not break the chain of legal causation "if the intervening act was itself probable, or foreseeable by the first wrongdoer." *Green v. Welts*, 130 Ill. App. 2d 600, 604 (1970). "To escape liability, defendant must demonstrate that the intervening event was unforeseeable as a matter of law." *Mack v. Ford Motor Co.*, 283 Ill. App. 3d 52, 57 (1996). In determining whether an intervening act was foreseeable, "the precise nature of the intervening act need not be foreseen and where varying inferences are possible, foreseeability is a question for the jury." (Internal citation omitted.) *Id.*, at 57.

¶ 33    Appellees contend they could not have reasonably foreseen Nash's negligent driving as a natural and probable result of the presence of an impact attenuator or "the decision not to install lane shift signs on the left lane at locations 500 and 1,000 feet west of the lane shift." Appellees argue that the presence of the impact attenuator and absence of lane shift signs did nothing more

10

than furnish a condition which made the accident possible, and that Nash's reckless driving was the sole legal cause of the accident.

¶ 34    In support of this argument, appellees claim they could not have reasonably foreseen that Nash would miss the lane shift where he had successfully driven through it on three occasions prior to the accident and where the highway pavement was painted to indicate the lane shift. Appellees point out that Nash testified that on the day of the accident, he did not pay attention to the pavement markings and admitted that he would not have adjusted his driving speed if he had seen the sign indicating a forty-five miles per hour speed limit. From this, appellees argue that it is speculative to assume that Nash would have observed and reacted to the lane shift sign if it had been posted on the roadway.

¶ 35    It is true that "[m]ere speculation is not enough to create a genuine issue of material fact sufficient to survive a motion for summary judgment." *Jordan v. Knafel*, 378 Ill. App. 3d 219, 228 (2007). However, "[i]n considering a motion for summary judgment, all reasonable inferences must be drawn strictly against the moving party and liberally in favor of the opponent." *Weedon v. Pfizer*, Inc., 332 Ill. App. 3d 17, 20 (2002).

¶ 36    Nash testified at his deposition that at approximately 7a.m. on the day of the accident, he was driving his limousine in the far left-hand lane going eastbound on I-90 when he entered the construction zone. According to Nash, traffic had slowed to approximately 65 miles per hour. The road was dry and the sun was rising in the east. Nash put his hand up to shield his eyes from the sun. Nash maintained that although the rising sun interfered with his vision, he was not "blinded" by it, as appellees claimed.

¶ 37    Traffic was "moderate to heavy," with vehicles to Nash's right and ahead of him. Nash testified that just before the accident, he observed a sign to his left which read: "STAY IN YOUR

11

LANE." When the vehicle ahead of Nash shifted to the right, he thought it was improperly merging or switching lanes. Nash stayed in the left lane and drove into an orange construction barrel and then struck the impact attenuator, causing the limousine to overturn.

¶ 38    Nash testified that if lane shift warnings signs had been posted on the left side of the roadway, in advance of the lane shift, he would "have been able to negotiate the turn." The original renovation plans had called for the warning signs to be posted near the spot where the "STAY IN YOUR LANE" sign was posted.

¶ 39    Appellants presented unrebutted evidence that the MUTCD, MOT, and project contracts called for six warning signs to be posted in advance of the lane shift. Appellants' engineering expert Rowland Lamb opined that "contract plans required the signs to be placed at 1000 feet, 500 feet, and 300 feet in advance of the start of the lane shift." William Schaefer, a resident engineer employed by EXP U.S. Service, Inc. (EXP), testified at his deposition that lane shift signs are typically posted 500 and 1000 feet in advance of a lane shift. Lamb stated that the correct placement of warning signs was critical, as the roadway curved and "shifted traffic 80 feet laterally north to south which was the equivalent of almost seven lanes of traffic."

¶ 40    Lamb added that the Illinois State Toll Highway Authority's (ISTHA) manual on Roadway Traffic Control and Communications adhered to the principle of "redundancy" in the placement of roadway warning signs. According to Lamb "[r]edundancy is a means of providing the motorist with additional opportunities to obtain the requisite information …. The sign series provides essential information even though some signs may not be observed." Schaefer predicted that the absence of warning signs "could become critical as warning signs are typically placed in advance of the situation to which they apply to provide adequate time for drivers to recognize the situation and take appropriate action." Nevertheless, Schaefer and others agreed to revise the MOT and not

place the warning signs in advance of the lane shift. See *Nash*, 2019 IL App (1st) 180840, ¶ 12.

¶ 41    Lamb opined that "[t]o a reasonable degree of engineering probability, had advanced warning signage been placed in advance of the lane shift, it would have provided Aaron Nash information to allow him to safely anticipate and negotiate the lane shift." Lamb further opined that "[d]espite sun conditions the morning of March 25, 2016, placement of advanced warning signs on the left side of the roadway would have provided Aaron Nash the required information for him to negotiate the lane shift."

¶ 42    Lamb, and appellants' other engineering expert, Scott Sebastian, disagreed with appellees' contention that there was no room to place the warning signs. Lamb stated there was no evidence that field conditions did not allow for placement of the warning signs and added that their absence violated standard traffic control practices. Sebastian stated that plans provided "adequate room to place advanced warning signage on the left-hand side of the roadway by straddling the median barrier wall or post-mounting signs on the median barrier wall." Lamb opined that the elimination of the advanced warning signs was dangerous, and that the danger should have been reasonably foreseeable to the appellees.

¶ 43    Evidence was presented concerning prior accidents at or near Mile Post 55.8, where the instant accident occurred. There was a text exchange between personnel from EXP and the Roderick Group Inc., PC (Roderick Group), about a vehicle hitting a barrier wall at Mile Post 57 in January 2016. And evidence was presented demonstrating that Plote Construction Inc. (Plote), was aware of a vehicle crash in the same location as the accident at issue, which required the construction company to make repairs to the temporary barrier.

¶ 44    Taken together, the above evidence raises a reasonable inference that it was foreseeable that the absence of lane shift signs, in advance of the shift, might cause a driver to miss a lane shift.

See, *e.g.*, *Lee*, 152 Ill. 2d at 456 (fact that Chicago Transit Authority placed warning signs at crossing supported finding that it was foreseeable that injuries would result from failure to warn of danger); *Martinelli v. City of Chicago*, 2013 IL App (1st) 113040, ¶ 31 ("City should have foreseen that, having blocked a traffic lane and implemented safety measures, the removal of those safety measures would negate the ability of the common distracted driver to react to danger created by the City's conduct"); *Parsons v. Carbondale Township*, 217 Ill. App. 3d 637, 649 (risk of motorist being unable to brake vehicle to avoid accident on dangerous hill at night because of his inability to see nonconforming warning sign was a foreseeable consequence of municipality installing warning sign that did not meet State Manual specifications). Here, Nash's alleged confusion in negotiating the lane shift was the very conduct the lane shift warning signs were designed to prevent.

¶ 45    Although appellees suggest that appellants' evidence is speculative, we find it creates a genuine issue of material fact that should be decided by the trier of fact and not on summary judgment. In light of the inferences we are required to draw in appellants' favor at this stage of the proceedings, we find that Nash's testimony and the opinion testimony of appellants' engineering experts create factual issues as to whether it was reasonably foreseeable that the absence of the mandated lane shift signs might cause Nash to miss the lane shift. The credibility and weight of Nash's testimony, as well as the expert opinion testimony of the engineers, should be decided by the trier of fact.

¶ 46    Foreseeability is not only an objective inquiry, but it is also context dependent. *Inman*, 2019 IL App (1st) 172459, ¶ 71. We distinguish the instant case from other cases relied upon by the appellees. See *Thompson*, 154 Ill. 2d at 377-78 (intoxicated driver was speeding to elude police when he drove off a highway that lacked proper warning signs); *Nelson v. Thomas*, 282 Ill. App.

3d 818, 819-23 (1996) (driver ran red light while fleeing from police); see also *Abrams*, 211 Ill. 2d at 255-56 (city's refusal to send an ambulance for a pregnant mother in labor was not the legal cause of accident when she was killed after running a red light while intoxicated driver sped through the intersection); *In re Estate of Elfayer*, 325 Ill. App. 3d 1076, 1078-79 (2001) (intoxicated driver hit median and crossed over unmaintained traffic barrier).[5]

¶ 47    The parties presented conflicting evidence as to how far over the speed limit Nash was traveling at the time of the accident. Evidence was presented that immediately before the crash, Nash was traveling 20 miles over the posted speed limit. However, evidence was also presented that he was traveling only 5 miles over the speed limit. Nash testified that he decided to drive with the "speed of traffic," though it was in excess of the posted speed limit of 45 miles per hour, as he believed that driving slower would be unsafe. Chris Tierney, a firefighter and paramedic who drove the route daily, was four or five car lengths behind Nash when the accident occurred. Like Nash, he drove with the flow of traffic and added that no one was driving the posted speed limit. Another witness, Zbigniew Rzucidlo, was traveling behind Nash at 50 or 55 miles per hour. He stated that Nash was traveling with the speed of traffic.

¶ 48    Courts have held that "[i]t is common knowledge that some drivers of automobiles exceed the posted speed limit on public highways." *Huff v. Goldcoast Jet Ski Rentals, Inc.*, 515 So. 2d 1349, 1351 (Fla. 4th DCA 1987). In light of this common knowledge and the conflicting evidence regarding Nash's speed at the time of the accident, we find that the trier of fact should be permitted to determine if it was reasonably foreseeable that Nash might drive over the posted speed limit and whether his speed was excessive under the circumstances. See, *e.g.*, *Chevrie v. Gruesen*, 208 Ill.

---

[5]Appellees' suggestion that Nash was fatigued because he drank an energy drink is disputable. Evidence was presented that Nash had a good night's sleep prior to the day of the accident and that he had a bowl of cereal for breakfast along with an energy drink.

App. 3d 881, 884 (1991) ("Both the question of a proper lookout and of speed appropriate to conditions are generally questions for the jury").

¶ 49    Appellees contend that Nash's lack of a commercial driver's license (CDL) meant that he lacked the proper training to operate the limousine. Nash was employed by Lyons Limousine, LLC, and testified that he did not possess a CDL because he was not required to have one in Wisconsin. Nash, who was a Wisconsin resident and 20 years old at the time of the accident, claimed he was unaware that drivers were required to possess a CDL to operate a limousine in Illinois, or that you had to be 21 to obtain a CDL.[6]

¶ 50    Our courts have held that possession of a driver's license is irrelevant to the issue of negligence. See *Riley v. Johnson*, 98 Ill. App. 3d 688, 693 (1981); see also *Westefer v. Rybacki*, 125 Ill. App. 2d 66, 69 (1970) (evidence concerning lack of a driver's license is irrelevant to the issue of proximate cause); *Wilson v. Hobrock*, 344 Ill. App. 147, 152 (1951) (evidence concerning lack of driver's license was properly excluded as it had no causal connection with, and was immaterial to the question of plaintiff's due care).

¶ 51    Appellees' contention that Nash lacked the proper training to operate the limousine is a conclusion. It is incumbent upon appellees to prove that Nash's lack of a CDL contributed to the accident. Here, appellees presented no evidence that points to Nash's failure to possess a CDL as a causal factor of the accident and therefore we cannot find, as a matter of law, that such failure was a proximate cause of the accident. In other words, we cannot conclude that had Nash possessed a CDL, the accident would not have occurred. See, *e.g.*, *Burroughs v. McGinness*, 63 Ill. App. 3d 664, 668 (plaintiff's failure to activate turn signal not a proximate cause of collision where court could not conclude from the evidence that the collision would not have occurred if the turn signal

---

[6]Nash pled guilty to not possessing a CDL.

was activated)

¶ 52 The facts of this case, along with the conclusions reached in the above cited cases, raise questions of material fact as to the relevance of Nash's failure to possess a CDL. They also raise questions of material fact as to whether it should have been reasonably foreseeable that limousine drivers from neighboring states, using the Illinois interstate highway system to access O'Hare Airport, might not possess a CDL.

¶ 53 We further find that genuine issues of material fact exist as to whether it was reasonably foreseeable that on a sunny morning, eastbound drivers on the stretch of I-90—where the accident occurred—might have their vision partially obstructed by the rising sun. See, *e.g.*, *Borden v. Creamland Dairies, Inc.*, 82 N.M. 628, 630, 485 P.2d 739, 741 (Ct. App. 1971) (whether motorist who claimed his vision was interfered with by rising sun was contributorily negligent in colliding with rear of parked vehicle presented jury question involving factors such as extent to which sun interfered with vision, speed and precaution taken to avoid accident, and the amount of advanced warning available to the motorist).

¶ 54                                III. CONCLUSION

¶ 55 We find the trial court erred in granting summary judgment in favor of appellees based on its finding that Nash's conduct was the sole proximate cause of the accident as a matter of law. In addition, because the trial court never considered or ruled on the alternative issues appellees raised in their motions for summary judgment, we find it prudent to remand these issues and give counsels the opportunity to present their arguments so that the trial court may make its findings and enter its determination accordingly. We reverse the trial court's order granting interlocutory summary judgment on the issue of proximate cause and remand for further proceedings consistent with this order.

¶ 56    Reversed and remanded with directions.